IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DEBRA FARRELL

Criminal Information

No. 1:25-cr-338

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One
Conspiracy to Commit Wire Fraud
18 U.S.C. § 371**

1. Beginning at least by in or about February 2022, and continuing until at least in or about June 2022, in the Northern District of Georgia and elsewhere, the defendant, **DEBRA FARRELL**, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the United States, to commit an offense against the laws of United States, that is: to devise and intend to devise a scheme and artifice to defraud lenders, and to obtain money and property from these lenders by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing this scheme, to cause wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343.

## Background

At all times relevant to this Information:

2. Defendant **FARRELL** operated a financial company that facilitated obtaining "hard money loans" for borrowers seeking to buy and flip residential properties, to purchase rental properties, and for new construction. Hard money loans are high-interest loans secured by real property. They are primarily used in real estate transactions.

3. Individual-1 was a commercial real estate developer primarily in the Atlanta metro area.

4. Individual-2 was a licensed real estate agent in the Northern District of Georgia through the real estate brokerage firm JP & Associates Realtors.

5. Individual-3 resided outside of the United States and created false and fraudulent documents, including fraudulent bank statements.

6. Attorney-1 was a closing attorney based in Atlanta, Georgia.

7. Alvarez Investment Group LLC ("Alvarez") was a Georgia limited liability company with a principal place of business in Conyers, Georgia. According to Georgia Secretary of State records, J.B. was Alvarez's purported organizer and registered agent. In actuality, Individual-1 owned and operated Alvarez.

8. 2 Big Legacy LLC ("2 Big Legacy") was a Georgia limited liability company with a principal place of business in Lithonia, Georgia. C.F. was

the purported CEO and managing member of 2 Big Legacy. In actuality, Individual-1 owned and operated 2 Big Legacy.

9. 2 Big Holdings LLC ("2 Big Holdings") was a Georgia limited liability company with a principal place of business in Lithonia, Georgia. C.F. was the purported sole member of 2 Big Holdings. In actuality, Individual-1 owned and operated 2 Big Holdings.

10. The "MLK Property" was a residential apartment complex located on Martin Luther King Jr. Drive in southwest Atlanta consisting of approximately 100 garden townhome-style apartments.

11. Lender-1 was a private money lender headquartered in Oregon who financed 2 Big Legacy's purchase of the MLK Property from Alvarez in or about June 2022.

12. Lender-2 was a private money lender who financed Alvarez's purchase of the MLK Property in or about November 2020.

**Manner and Means**

13. Beginning no later than in or about February 2022 and continuing until at least in or about June 2022, defendant **FARRELL**, Individual-1, Individual-2, Attorney-1, and others executed a scheme to fraudulently obtain a hard money loan for the purported sale and purchase of the MLK Property from Alvarez to 2 Big Legacy ("the Transaction").

3

14. To obtain hard money loans from various institutions, including Lender-1, defendant **FARRELL**, and others, submitted and caused to be submitted false and fraudulent loan applications that included multiple material misrepresentations, including about the identity of the actual borrower and fabricated bank statements. If Lender-1 had known that the Transaction was not arm's length, *i.e.*, that the borrower/buyer and seller were on both sides of the transaction, that the borrower, C.F., was a straw purchaser, that the conspirators had submitted fabricated bank statements, and that the loan proceeds were not used for the intended purpose of financing the Transaction, Lender-1 would not have approved the loan.

15. Individual-2 was the listing agent for the MLK Property. On or about March 11, 2022, J.B., on behalf of Alvarez, executed an exclusive seller brokerage agreement with Individual-2. The brokerage agreement stated that the MLK Property was being listed for $17,000,000. Under the terms of the brokerage agreement, Individual-2 was entitled to a commission equal to 1% of the sales price.

16. Beginning in or about February 2022, Individual-1 directed defendant **FARRELL** to work with brokers to identify potential lenders to finance the Transaction.

17. Defendant **FARRELL** corresponded with other brokers in her network to obtain financing for Individual-1 to purchase the MLK

Property through 2 Big Legacy.  Through defendant **FARRELL**'s network, she identified Lender-1 as a potential source of financing.  In or about March 2022, an application for financing was submitted to Lender-1 with C.F. listed as the owner of 2 Big Legacy.

18. As part of the lending process, Lender-1 required bank statements from the borrower, 2 Big Legacy, and its purported owner, C.F. On or about February 3, 2022, defendant **FARRELL** provided C.F.'s actual bank statements for C.F.'s business to Individual-1 and Individual-2, including a December 2021 bank statement for C.F.'s business account at JPMorgan Chase account x3536 ("Chase x3536"). As of December 31, 2021, C.F.'s Chase x3536 account showed an ending balance of $623.25. Throughout the lending process, defendant **FARRELL** requested that Individual-1 and Individual-2 provide specific bank statements for C.F.'s business account, 2 Big Legacy, and 2 Big Holdings. Individual-1, not C.F., was the lone signatory for the bank accounts in the names of 2 Big Legacy and 2 Big Holdings.

19. Individual-2 found Individual-3 on Fiverr, a freelance services marketplace, who was willing to prepare fraudulent bank statements. Individual-2 thereafter emailed Individual-3 a copy of C.F.'s actual Chase x3536 December 2021 bank statement, from which Individual-3 generated fake bank statements for Chase x3536 account for December 2021, January

2022, February 2022, March 2022, April 2022, and May 2022, fraudulently showing ending balances of $6,000,623,.25, $6,002,595.14, $8,000,638.25, $8,001,610.14, $8,005,701.98, and $8,006,638.25, respectively. In reality, the balance in Chase x3536 account for each month was, respectively, $623.25, $11,978.52, $3,457.34, $325.84, $506.10, and $200.16. Individual-2 paid Individual-3 to make these fraudulent bank statements via Western Union.

20. On multiple occasions, between approximately February 2022 and May 2022, defendant **FARRELL** requested from Individual-2 (and in some cases Individual-1 and Individual-2) bank statements for 2 Big Legacy and 2 Big Holdings. Individual-2 provided fake and fraudulent bank statements for both entities. For example, on or about March 3, 2022, Individual-2 emailed defendant **FARRELL** (copying Individual-1) purported December 2021 and January 2022 bank statements for 2 Big Holdings' Bank of America account x5037 ("BOA x5037"), showing ending balances over $6.8 million for each month. In actuality, the BOA x5037 account was closed in or about October 2021. Similarly, on or about April 11, 2022, defendant **FARRELL** requested from Individual-1 and Individual-2 a copy of the March 2022 bank statement for 2 Big Legacy's Bank of America account x4804 ("BOA x4804"). In response, Individual-2 emailed Individual-1 a fraudulent March 2022 statement for the BOA x4804 account showing a balance of $3,070,311.92, when the actual balance

6

was $423,934.85. On or about April 12, 2022, Individual-1 forwarded to defendant **FARRELL** the fraudulent March 2022 BOA x4804 statement he had received from Individual-2.

21. During the lending process, defendant **FARRELL** electronically submitted and caused to be electronically submitted to Lender-1 the false and fraudulent bank statements for the Chase x3536, BOAx5037, and BOA x4804 accounts for the purpose of misleading Lender-1 into believing that the purported borrower, C.F., had millions in liquid assets. Defendant **FARRELL**, Individual-1, and Individual-2 knew these bank statements were false and fraudulent when they were ultimately submitted to Lender-1.

22. Attorney-1 was responsible for preparing the certified settlement statement for the Transaction. The settlement statement was intended to provide a true and accurate breakdown of the financial aspects related to the Transaction, including disclosing the following information: the sale price, loans charges, any loan payoffs, title charges, recording fees, and other miscellaneous charges.

23. In preparation for the closing on the MLK Property and prior to Attorney-1 releasing any loan proceeds from Lender-1, Attorney-1 was required to follow Lender-1's closing instructions, which included preparing a certified settlement statement for the Transaction. Attorney-1

initialed after each of the Lender-1's closing instructions acknowledging he followed the instruction. Attorney-1 prepared and later submitted the certified settlement statement to Lender-1 for the Transaction knowing it contained false information.

24. For example, Lender-1's closing instructions directed Attorney-1 to confirm all liens, encumbrances, and mortgages on the MLK Property were either cleared prior to closing or paid through the closing of the escrow. Attorney-1 knew that Alvarez owed over approximately $9 million to Lender-2 from when Alvarez purchased the property in November 2020 because Attorney-1 was also the closing attorney for that transaction. Attorney-1 failed to disclose the outstanding loan to Lender-2 on the settlement statement.

25. Lender-1's closing instructions also required Attorney-1 to provide a certified copy of the settlement statement disclosing how the loan proceeds were disbursed at the Transaction's closing. Attorney-1 falsely represented in the certified settlement statement that the buyer, 2 Big Legacy, had transferred approximately $5.9 million to Attorney-1 toward the purchase price, and Attorney-1 had paid approximately $16.9 million to the seller, Alvarez, at closing. In actuality, Attorney-1 knew that Attorney-1 neither received $5.9 million from 2 Big Legacy nor paid $16.9 million to Alvarez at the closing.

26. Attorney-1 was further aware, but did not disclose to Lender-1, that the sale of the MLK Property from Alvarez to 2 Big Legacy was not an arm's length transaction because Individual-1 was on both sides of the transaction.

27. On or about June 1, 2022, Lender-1 caused an electronic wire transfer of $11,900,000 to be transmitted to Attorney-1's account.

28. The funds received by Attorney-1 from Lender-1 were not used in the manner set out in the certified settlement statement prepared by Attorney-1. Instead of paying Alvarez $16.9 million in proceeds as the seller of the MLK Property, a substantial portion of the funds were used to pay Lender-2. On or about July 1, 2022, Attorney-1 wired $10,324,876.79 to Lender-2. Lender-1 would not have disbursed the loan proceeds to Attorney-1 if it knew the certified settlement statement contained false information.

29. After the closing, on or about June 9, 2022, defendant **FARRELL** received $118,955 for her role in the transaction.

30. After the closing, on or about June 15, 2022, Individual-2 received $135,250 for her role in the transaction.

31. After not receiving the first scheduled loan payment from 2 Big Legacy in August 2022, Lender-1 began foreclosure proceedings on the MLK Property, and ultimately took possession of the property.

**Overt Acts**

32. To carry out the conspiracy and effect the objects and purposes thereof, the defendant, **DEBRA FARRELL**, and known and unknown members of the conspiracy, committed various overt acts, among others, in the Northern District of Georgia and elsewhere:

    a.  On or about February 3, 2022, defendant **FARRELL** emailed Individual-1 and Individual-2, the actual December 2021 statement for C.F.'s Chase x3536 business account, showing an ending balance of $623.25.

    b.  On or about February 4, 2022, Individual-2 emailed Individual-1 and defendant **FARRELL**, a fraudulent December 2021 statement for C.F.'s Chase x3536 business account, showing an ending balance was $6,000,623.25.

    c.  On or about February 9, 2022, Individual-2 emailed Individual-1 and defendant **FARRELL**, a fraudulent January 2022 statement for C.F.'s Chase x3536 business account, showing an ending balance was $6,002,595.14.

    d.  On or about March 2, 2022, defendant **FARRELL** requested from Individual-1 and Individual-2, February 2022 bank statements for 2 Big Legacy and 2 Big Holdings.

    e.  On or about March 3, 2022, Individual-2 emailed Individual-1 and defendant **FARRELL** fraudulent December 2021, January

2022, and February 2022 statements for 2 Big Holdings' BOA x5037 account, each of which showed ending balances over $6.8 million.

f. On or about April 12, 2022, Individual-1 forwarded to defendant **FARRELL** a fraudulent March 2022 bank statement for 2 Big Legacy's BOA x4804 account.

g. On or about April 21, 2022, Individual-1 forwarded to defendant **FARRELL** a fraudulent March 2022 bank statement for 2 Big Holdings' BOA x5037 account.

h. On or about April 21, 2022, Individual-2 emailed Individual-3 the actual December 2021 statement for C.F.'s Chase x3536 business account, showing an ending balance of $623.25 and requested Individual-3 make a fraudulent March 2022 bank statement for the Chase x3536 account.

i. On or about April 21, 2022, Individual-2 sent $200 to Individual-3 via Western Union and emailed Individual-3 a copy of the receipt.

j. On or about April 21, 2022, Individual-3 emailed Individual-2 a fraudulent March 2022 statement for C.F.'s Chase x3536 business account, showing an ending balance was $8,001,610.14.

k.  On or about May 3, 2022, defendant **FARRELL** emailed Individual-1 and Individual-2 requesting an April 2022 statement for 2 Big Legacy.

l.  On or about May 4, 2022, Individual-2 emailed Individual-3 the fraudulent March 2022 statement for C.F.'s Chase x3536 business account that Individual-3 had fabricated as a template to create a fraudulent April 2022 statement for the Chase x3536 account.

m.  On or about May 4, 2022, Individual-3 emailed Individual-2 a fraudulent April 2022 statement for C.F.'s Chase x3536 account, showing an ending balance was $8,005,701.98.

n.  On or about May 4, 2022, Individual-2 sent $200 to Individual-3 via Western Union and emailed Individual-3 a copy of the receipt.

o.  On or about June 5, 2022, defendant **FARRELL** emailed the fraudulent April and May 2022 statements for C.F.'s Chase x3536 business account to other brokers who forwarded defendant **FARRELL's** original email with the fraudulent statements to Lender-1.

p.  On or about June 9, 2022, Attorney-1 wired $118,955 to defendant **FARRELL** in connection with the Transaction.

12

q.   On or about June 9, 2022, Attorney-1 wrote a check for
$170,000 to JP & Associates Realtors, as the listing agent for
the MLK Property.  On or about June 15, 2022, JP & Associates
Realtors wrote a check for $135,250 to Individual-2 reflecting
her commission on the sale of the MLK Property.

r.   On or about July 1, 2022, Attorney-1 wired $10,324,876.79
million to Lender-2.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture

33. Upon conviction of the offense alleged in Count One of this
Information, the defendant, **DEBRA FARRELL,** shall forfeit to the United
States of America, pursuant to Title 18, United States Code, Section
981(a)(1)(C) and Title 28, United States Code, Section 2461, any property,
real or personal, which constitutes or is derived from proceeds traceable to
such offense. The property to be forfeited includes, but is not limited to,
the following:

MONEY JUDGMENT: A sum of money in United States
currency, representing the amount of proceeds obtained
as a result of the offense alleged in Count One of this
Information.

13

34. If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

14